UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILROY E. JOHNSON, | No. 2:16-cv-0367 AC P |
| Plaintiff, | |
| v. | ORDER |
| SUZANNE M. PERRY, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, currently incarcerated at California State Prison Sacramento, who proceeds pro se with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. Plaintiff requests to proceed in forma pauperis and for appointment of counsel. Plaintiff has consented to the jurisdiction of the undersigned Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c), and Local Rule 305(a). See ECF No. 5. For the reasons set forth below, the court grants plaintiff's application to proceed in forma pauperis; dismisses plaintiff's complaint with leave to file a First Amended Complaint; and denies without prejudice plaintiff's request for appointment of counsel.

I.  In Forma Pauperis Application

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, plaintiff's request to proceed in forma pauperis will be granted.

////

1

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

      II.      Screening of Plaintiff's Verified Complaint

            A.      Plaintiff's Allegations

Plaintiff seeks $50 million in damages against nineteen defendants for conduct that allegedly occurred at High Desert State Prison (HDSP) during plaintiff's incarceration there.

Plaintiff initially alleges that, after reporting the sexual misconduct of a correctional officer, plaintiff was accused of being a snitch by correctional staff and inmates alike, and feared for his safety. On March 14, 2014, plaintiff was charged with the manufacture of a deadly weapon and moved to the Administrative Segregation Unit (ASU). Although found guilty of the charge, the committee concluded that plaintiff "was never actually in Possession of a Weapon." See ECF No. 1 at 20. Plaintiff alleges that while he was housed in the ASU, correctional staff contaminated his food with semen and excrement.

Plaintiff was released from the ASU, and returned to the general population, in July 2014. In October 2014, a correctional officer told other inmates that plaintiff was, among other things, homosexual and a child molester. Id. at 8. Plaintiff was ostracized by other inmates and again felt that his safety was in danger. On October 17, 2014, plaintiff was "assaulted by an inmate at the order of custody members." Id. Plaintiff was placed in a holding cage, where he heard correctional staff talking about him, including one staff member "conversing about petitioner's family and how he obtained petitioner's juvenile and medical records." Id. at 9. On November 17, 2014, plaintiff heard one inmate state to another, "Ain't y'all suppose to be stabbing him

1  today?"  Id.  Due to fear for his safety, plaintiff refused to come out of his cell for thirty days and
2  wrote to the superior court.

3        On November 27, 2014, plaintiff overheard a correctional officer telling one of plaintiff's
4  psychiatrists confidential information about plaintiff.  Id. at 10.  Correctional staff were rude to
5  plaintiff and made threatening statements.  Id. at 10-1.  Witnessing correctional staff failed to
6  intervene.  Id. at 12.

7        Plaintiff alleges that his attempts to submit administrative grievances were thwarted by
8  prison officials in November and December 2014.  Id. at 10-1.  In addition, correctional staff
9  failed to process plaintiff's outgoing mail.  Id. at 11.  On the form portion of his complaint,
10 plaintiff states that he did not exhaust the grievance process.  Id. at 2.

11       In January and February 2015, plaintiff received "tainted" food, which included a
12 correctional officer's saliva.  Id. at 12.  On June 30, 2015, following a committee hearing,
13 plaintiff's psychiatrist questioned committee members about their harassment of plaintiff, asking
14 "When are you guys going to stop messing with him?"  One officer reportedly responded,
15 "Everything will be over when he gets stabbed.  We've been talking to some of the guys so things
16 will be over with soon."  Id. at 13.

17       On July 1, 2015, plaintiff was attacked by two inmates and sustained facial injuries
18 (bruises, not lacerations).  See id. at 13-4, 36-7.  Plaintiff alleges that custody staff watched the
19 attack and allowed it to proceed for about three minutes before intervening.  At the infirmary, a
20 nurse reportedly told plaintiff:  "See what we made happen?  See how we do?  This is what
21 happens when you [mess] with us, this is how High Desert does it."  Id. at 13.  Plaintiff was taken
22 to the hospital where custody staff shared a picture of plaintiff's swollen face and said, "Look
23 what we did to Johnson."  Id.  After his return to HDSP, correctional staff failed to seriously
24 consider plaintiff's safety fears.  Id. at 13-4.

25       On July 6, 2015, plaintiff's evening meal included an "unknown substance" that made him
26 very ill.  Plaintiff heard correctional staff express concern that the "substance" was not supposed
27 to make plaintiff die, which plaintiff construes as an admission that staff placed the substance in
28 his food.  Id. at 14.

3

Finally, plaintiff alleges that "some time in February of 2016, petitioner received reports from an internal affairs investigation at High Desert State Prison." Id. at 14.

### B.  Legal Standards for Screening Prisoner Civil Rights Complaint

The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

4

C. <u>Screening of Plaintiff's Complaint</u>

This court finds the allegations in plaintiff's complaint so wide-ranging and vague that it is unable to determine whether plaintiff can state a cognizable claim for relief. Putative defendants are named throughout the complaint, but the allegations against them are not sufficiently articulated to support a cognizable claim.

Although the Federal Rules adopt a flexible pleading policy, a complaint must identify each claim plainly and succinctly, and give fair notice to all defendants of the claims against them. <u>Jones v. Cmty. Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984). The complaint must allege with particularity the overt acts that each defendant allegedly engaged in that frame the legal claim(s) against them. <u>Id.</u>

Because the complaint does not contain a short and plain statement of plaintiff's claims, as required by Rule 8, Federal Rules of Civil Procedure, the complaint must be dismissed. The court will, however, grant plaintiff leave to file an amended complaint, and provide guidance on the elements of potential claims in an amended complaint.

The court first address the threshold requirement that plaintiff cannot proceed with this civil action unless he exhausted all "available" administrative remedies on each of his claims.

1. <u>Exhaustion of Available Administrative Remedies</u>

Plaintiff concedes that he did not exhaust pertinent administrative remedies. ECF No. 1 at 2. He alleges that his attempts to submit administrative grievances were thwarted by prison officials in November and December 2014. <u>Id.</u> at 10-1.

The Prison Litigation Reform Act (PLRA) requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions. 42 U.S.C. § 1997e(a); <u>see</u> <u>Ross v. Blake</u>, __ U.S.__ (June 6, 2016), Slp. Opn., Case No. 15-339, 2016 WL 3128839 at *11, 2016 U.S. LEXIS 3614 at *27 ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." <u>Brown v. Valoff</u>, 422 F.3d 926, 935 (9th

5

Cir. 2005) (original emphasis) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

Pursuant to these legal standards, plaintiff must demonstrate that he administratively exhausted each of his legal claims against the appropriate defendant(s), or explain how administrative remedies were unavailable to exhaust a specific claim against a specific defendant. The Supreme Court has identified only three circumstances that support a finding of unavailability: (1) when an administrative procedure "operates as a simple dead end – when officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the administrative process is "so opaque that if becomes, practically speaking, incapable of use," that is, "no ordinary prisoner can discern or navigate it;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, supra, Slp. Opn. at 9-10. Cf. Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.").

In light of this threshold requirement, plaintiff cannot proceed with any claim in this action unless he can demonstrate that he exhausted all "available" administrative remedies on each claim.

### 2. Potential Legal Claims in a First Amended Complaint

If plaintiff chooses to file a First Amended Complaint, he must identify the specific acts of specific defendants that reflect the elements of each of plaintiff's legal claims. One or more of the following legal claims may apply to conduct that plaintiff is attempting to challenge in this action, as set forth in plaintiff's currently alleged facts.

#### A. Failure to Protect

Plaintiff makes numerous allegations that various correctional officers, under various circumstances, threatened plaintiff's safety or incited inmates and other correctional officers to threaten plaintiff's safety.

////

6

A "failure to protect" claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and wellbeing of the prisoner. Farmer, 511 U.S. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). "[P]rison officials have a duty. . . to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (citation and internal quotation marks omitted).

As a general rule, "verbal harassment or abuse . . . [alone] is insufficient to state a constitutional deprivation under 42 U.S.C. 1983." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (citation and internal quotation omitted). A "mere threat" does not state a cause of action, even if it is "a threat to do an act prohibited by the Constitution." Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam) (threat of bodily harm did not state cognizable civil rights claim).

Nevertheless, verbal harassment that is intended to harm or endanger a prisoner may violate the Constitution. Cf. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998) (verbal harassment was not "unusually gross even for a prison setting . . . [nor] calculated to and did cause him psychological damage"). "A prisoner may state an Eighth Amendment claim under § 1983 for [] harassment only if the alleged harassment was sufficiently harmful, that is, a departure from 'the evolving standards of decency that mark the progress of a maturing society,' and the defendant acted with intent to harm the prisoner." Minifield v. Butikofer, 298 F. Supp. 2d 900, 903 (N.D. Cal. 2004) (sexual harassment) (quoting Hudson, 503 U.S. at 6, 8) (additional citation omitted). Thus, a correctional officer calling a prisoner "a 'snitch' in the presence of other inmates [it] is 'material' to a section 1983 claim for denial of the right not to be subjected to physical harm by employees of the state acting under color of law." Valandingham v. Bojorquez, 866 F.2d 1135, 1139 (9th Cir. 1989);

accord, Thomas v. D.C., 887 F. Supp. 1, 4-5 (D.D.C. 1995) (allegations that correctional officer "sexually assaulted and harassed [plaintiff] and told other inmates that he was a homosexual and a 'snitch' . . . posed a substantial risk of serious bodily harm . . . [which, together with that failure of prison officials to] take reasonable measures to guarantee his safety . . . is enough to demonstrate deliberate indifference and may form the basis of an Eighth Amendment claim."). In Flores v. Wall, plaintiff alleged that two correctional officers were spreading rumors that plaintiff was homosexual and a snitch. Relying on several similar cases, the district court found plaintiff's allegations sufficient to state a claim for deliberate indifference to plaintiff's safety.[1] See 2012 WL 4471101, at *12, 2012 U.S. Dist. LEXIS 136668, at *41-2 (D.R.I. Aug. 31, 2012), report and recommendation adopted, 2012 WL 4470998, 2012 U.S. Dist. LEXIS 139972 (D.R.I. Sept. 25, 2012) (Case No. CA 11-69 M).

---

[1] The district court in Flores relied on the following cases to find an Eighth Amendment claim, see 2012 WL 4471101, at *12, 2012 U.S. Dist. LEXIS 136668, at *41-2:
> See Skinner v. U.S. Bureau of Prisons, 283 Fed. Appx. 598, 599 (10th Cir. 2008) [] ("'[L]abeling an inmate a snitch satisfies the Farmer standard, and constitutes deliberate indifference to the safety of that inmate.'"); see also Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008)("At least three other circuits have agreed with [plaintiff]'s position that labeling an inmate a snitch violates the guard's duty to protect inmates."). A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009)(citing Farmer []). "Courts have long held that prison officials who identify an inmate as a 'snitch' to other inmates, with intent to provoke an assault or the fear of assault, demonstrate deliberate indifference to the inmate's safety and may be liable under the Eighth Amendment." McPherson v. Beckstrom, Civil Action No. 0:010–00108–HRW, 2011 WL 13649, at *4 (E.D. Ky. Jan. 4, 2011) [citations omitted]; see also Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001) (noting its own prior holding and stating that "[o]ther circuits have also recognized that labeling an inmate a snitch has the potential for great harm and may violate the constitutional guarantees"); Edwards v. Dwyer, No. 1:06–CV–1 CAS, 2008 WL 4643946, at *4 (E.D. Mo. Oct. 20, 2008) ("The Eighth Circuit has 'recognized that an inmate who is considered to be a snitch is in danger of being assaulted or killed by other inmates.' ") (quoting Irving [v. Dormire], 519 F.3d [441], 449 at 450) [see also Irving at 449 (officer's death threats, "viewed in the light of their retaliatory nature, their objectively credible basis, and their fear-inducing result . . . form the basis of an injury sufficiently serious to implicate the Eighth Amendment")].

1     Pursuant to these legal standards, to state a cognizable failure-to-protect claim against a
2 specific correctional officer, plaintiff must allege that the specified officer, on a given date,
3 engaged in specific conduct that demonstrates the officer knew of a substantial risk to plaintiff's
4 safety and disregarded that risk.  Plaintiff must describe the challenged conduct in sufficient detail
5 to demonstrate that defendant was aware of the objectively serious risk to plaintiff's safety and
6 intentionally disregarded it.

## B.     Conditions of Confinement - Food

8     Plaintiff alleges that his food was tampered with and contaminated on several occasions.
9     "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food,
10 clothing, sanitation, medical care, and personal safety.  The circumstances, nature, and duration of
11 a deprivation of these necessities must be considered in determining whether a constitutional
12 violation has occurred.  The more basic the need, the shorter the time it can be withheld." Johnson
13 v. Lewis, 217 F.3d 726, 731-32 (9th Cir. 2000) (citations and internal quotation marks omitted).
14 "The Eighth Amendment requires only that prisoners receive food that is adequate to maintain
15 health; it need not be tasty or aesthetically pleasing." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th
16 Cir. 1993) (citation omitted).  "The fact that the food occasionally contains foreign objects . . .
17 while unpleasant, does not amount to a constitutional deprivation." Id. (citation and internal
18 quotation marks omitted).  However, "[p]reventing disease and protecting the health of inmates
19 are legitimate penological goals." McClure v. Tucker, 276 Fed. Appx. 574, 575 (9th Cir. 2008).
20 "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an
21 infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern,
22 45 F.3d 1310, 1314 (9th Cir.), opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995).
23     Hence, deliberate food tampering and/or contamination, with the intent to cause a prisoner
24 psychological and/or physical harm, may be actionable under the Eighth Amendment depending
25 on the "circumstances, nature, and duration" of the challenged conduct. Johnson, 217 F.3d at
26 731-32. As with other Eighth Amendment conditions-of-confinement claims, a claim based on
27 tampered and/or contaminated food must satisfy both the objective component that the alleged
28 deprivation of adequate food was "sufficiently serious," and the subjective component that the

1  prison official acted with a "sufficiently culpable state of mind," Farmer, 511 U.S. at 834, that is,
2  that the official knew of and disregarded an excessive risk to plaintiff's health, id. at 837.

3  Pursuant to these legal standards, to state a cognizable claim based on food tampering
4  and/or contamination, plaintiff must allege additional facts. Each alleged incident should include
5  the date; plaintiff's housing at the time and the subject meal; a description of the alleged
6  contamination; the identity of the alleged perpetrator; and the identity of any other correctional
7  staff member who knowingly delivered the contaminated food to plaintiff and/or failed to correct
8  the problem. Plaintiff must describe each challenged incident with sufficient detail to show that
9  each defendant allegedly involved in the incident was aware of an objectively serious risk to
10  plaintiff's health and but disregarded the risk.

## C. Interference with Legal Mail

12  Plaintiff alleges that correctional officer J. Jackson failed to process plaintiff's outgoing
13  legal mail on December 9, 2014. ECF No. 1 at 11. The complaint makes no other pertinent
14  allegations.

15  This allegation, if additional facts are provided, may potentially support a claim for denial
16  of access to the courts. Prisoners have a First and Fourteenth Amendment right of access to the
17  courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). This right includes "the opportunity to
18  prepare, serve and file whatever pleadings or other documents are necessary or appropriate in
19  order to commence or prosecute court proceedings affecting one's personal liberty." Id. at 384.
20  The right "requires prison authorities to assist inmates in the preparation *and filing* of meaningful
21  legal papers by providing prisoners with adequate law libraries or adequate assistance from
22  persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977) (emphasis added).

23  In order to state a denial-of-access claim, a prisoner must show that he suffered an "actual
24  injury" as a result of the defendants' actions by explaining how the challenged official acts or
25  omissions hindered plaintiff's efforts to pursue a nonfrivolous legal claim. Lewis v. Casey, 518
26  U.S. 343, 351-55 (1996). Actual injury may be shown if the alleged shortcomings "hindered his
27  efforts to pursue a legal claim," such as having his complaint dismissed for "for failure to satisfy
28  ////

some technical requirement" or that he "suffered arguably actionable harm that he wished to bring before the courts[.]" Id. at 351.

Pursuant to these legal standards, plaintiff may be able to state a cognizable denial-of-access claim based on the failure to process his legal mail. Plaintiff must provide additional facts and plausibly allege that the failure of correctional officer J. Jackson to process plaintiff's outgoing legal mail on December 9, 2014, resulted in an actual legal injury to plaintiff, as defined above, and specifically identified in the amended complaint.

### III.     Motion for Appointment of Counsel

Plaintiff requests appointment of counsel. See ECF No. 3. Plaintiff has filed a form request, adding that he has only basic knowledge of the law; does not have the resources necessary to investigate and research the factual and legal matters presented by this case; and that he has sought, unsuccessfully, the assistance of outside counsel.

Plaintiff is informed that this court has no authority to require an attorney to represent an indigent prisoner in a civil rights action. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). Only in certain exceptional circumstances may a district court request the voluntary assistance of a willing attorney. See 28 U.S.C. § 1915(e)(1); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009).

The present case is too early in the process to ascertain the appropriateness of appointing counsel. Because plaintiff has not submitted a complaint that states a cognizable claim for relief, the court is unable to assess the likelihood of success on the merits of plaintiff's putative claims. Moreover, the complaint demonstrates that plaintiff is able to articulate his claims pro se,

Case 2:16-cv-00367-AC   Document 6   Filed 06/24/16   Page 12 of 14

provided he adheres to the guidance set forth in this order in drafting his First Amended Complaint. For these reasons, the court finds that plaintiff has not met his burden of demonstrating exceptional circumstances warranting the appointment of counsel at this time. Accordingly, his request will be denied without prejudice.

   IV.  Leave to File Amended Complaint

   For the reasons set forth above, plaintiff's complaint is dismissed without prejudice for failure to state a cognizable claim. Dismissal is with leave to file a First Amended Complaint (FAC).

   If plaintiff chooses to file a FAC, it must allege in specific terms how each named defendant violated plaintiff's constitutional rights. Rizzo v. Goode, 423 U.S. 362, 371 (1976); see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978) ("A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."). Vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

   The FAC will supersede the original complaint and must therefore be complete in itself without reference to the original complaint. See Local Rule 220; Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Therefore, the FAC must clearly identify each claim and the challenged conduct of each defendant. A First Amended Complaint should include a chronology of pertinent facts, and the separate identification of each legal claim; the defendant(s) against whom the claim is made; and the alleged conduct of each defendant that supports the asserted legal claim. Plaintiff is advised to review this order to ascertain the elements for stating potentially cognizable legal claims.

////

V.   Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's request to proceed in forma pauperis in this action, ECF No. 4, is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's request for appointment of counsel, ECF No. 2, is denied without prejudice.

4. Plaintiff's complaint is dismissed with leave to file a First Amended Complaint.

5. The Clerk of Court is directed to send plaintiff a blank form complaint used by prisoners in this district to pursue a civil rights action under 42 U.S.C. § 1983.

6. Within thirty days after the filing date of this order, plaintiff may complete the attached Notice of Amendment and submit the following documents to the court:

   a. The completed Notice of Amendment; and

   b. One copy of plaintiff's First Amended Complaint, so labeled and bearing the docket number assigned this case.

7. Failure to file a First Amended Complaint in accordance with this order will result in the dismissal of this action without prejudice.

DATED: June 23, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

```
1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                  FOR THE EASTERN DISTRICT OF CALIFORNIA
9
10  GILROY E. JOHNSON,                    No.  2:16-cv-0367 AC P
11              Plaintiff,
12       v.                               NOTICE OF AMENDMENT
13  SUZANNE M. PERRY, et al.,
14              Defendants.
```

Plaintiff hereby submits the following document in compliance with the court's order filed _____.

_____        First Amended Complaint

_____        _____
Date                                              Plaintiff